

New Jersey Office
130 Pompton Avenue
Verona Nj 07044
(973) 239-4300

New York Office
48 Wall Street – 5th fl.
NYC, NY 10005
(646) 779-2746

Lorraine@lgrlawgroup.com

www.lgaulirufo.com
Fax: (973) 239-4310

June 15, 2021

*Via ECF*
Hon. Jesse M. Furman
United States District Court Judge
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

        **Re:**   *United States v. Arguendas (Jacobb Padin)*
                Criminal No. 20-CR-135 (JMF)

Dear Judge Furman,

      This sentencing memorandum is submitted on behalf of Jacobb Padin (hereinafter, "Mr. Padin") who is scheduled to be sentenced by Your Honor on June 29, 2021. On March 18, 2020, Mr. Padin was arrested and subsequently charged by federal authorities for conduct that occurred between 2011 and March 2020. Presentence Report ("PSR") ¶ 14. He accepted full responsibility for his conduct underlying this offense and pled guilty to a one-count superseding indictment. PSR ¶ 21. Pursuant to a plea agreement, Mr. Padin pled guilty to the lesser included offense of a violation of 21 U.S.C. § 846, 21 U.S.C.§ 841(b)(1)(B). PSR ¶ 22. For the reasons set forth below, Mr. Padin respectfully asks Your Honor to impose the lowest possible sentence, which is 60 months incarceration. The factual and legal support for this request is set forth below.

## BACKGROUND FACTS

Mr. Padin had a difficult childhood—he was raised by both of his parents until he was 10 or 11 years old, at which point his parents dissolved their relationship. PSR ¶ 66. Mr. Padin's father was both emotionally and physically abusive toward him and his mother. PSR ¶ 66. When Mr. Padin was just 2 or 3 years old, he and his older siblings were sent to foster care for approximately a week because of allegations of child abuse and neglect against his mother. *Id.* The claim was quickly resolved—Mr. Padin believes his maternal aunt fabricated this allegation. *Id.* When Mr. Padin was 6, his father's extreme disciplinary measures began to take shape. PSR ¶ 67. He was particularly aggressive toward Mr. Padin after consuming alcohol—he would hit him with a belt or make him kneel on rice for periods of time. *Id.* This strained Mr. Padin's relationship with his father. *Id.* Mr. Padin tried to be close with his father, but he was always consumed by other romantic relationships and the multiple children that came from them. *Id.* He was often left alone with older siblings, whom he feels resent him due to them being forced to take care of them. *Id.* Mr. Padin was able to eventually rekindle his relationship with his father, due to his arrest in the instant offense. PSR ¶ 67.

[redacted] Mr. Padin also has experienced severe attacks ever since he was 14—he has been "jumped" over 10 times in his life. PSR ¶ 71. These attacks have resulted in concussions, trauma to the head, stitches, lacerations, and knife threats. PSR ¶ 72. Two of the most recent attacks took place inside his apartment building in mid-2019. PSR ¶ 71. He and his family experience continuous stress and anxiety, and fear for their safety. PSR ¶ 72. They are so fearful; they have requested a safety transfer to move their housing placement to another area. PSR ¶ 71.

. Mr. Padin has been in a relationship with Michelle Torres for the last 8 years and they have two children together, ages 3 and 1. PSR ¶ 73. He was fortunate to be home for the birth of his recent child and has been extremely helpful in taking care of the children for the last 14 months. The four of them live together, with Mr. Padin's mother, stepfather and his younger sister. PSR ¶ 74. Mr. Padin's entire family has remained incredibly supportive of him through these legal proceedings. PSR ¶ 76. His mother has described Mr. Padin as a "great kid" who was "at the wrong place at the wrong time," but she is "behind him 100%." *Id.*

Mr. Padin has severe asthma, high blood pressure, kidney stones, and has undergone multiple surgeries for injuries that have stemmed from car accidents, work injuries, and sports injuries. PSR ¶ 8-82. Mr. Padin is prescribed and takes Seroquel, Symbicort, and Ventolin HFA to manage his symptoms for his various ailments. PSR ¶ 81. Additionally, in July 2019, Mr. Padin was hospitalized after being jumped and attacked with an unknown object—he suffered head trauma and a hematoma. PSR ¶ 83. His doctors have said if he is ever hit again, he may

suffer very serious complications as a result. *Id.* In light of his severe health conditions and the COVID-19 pandemic, Your Honor ordered the temporary release of Mr. Padin on April 8, 2020 and granted nine extensions of his temporary release since then. *See* Dkt. 429.

Additionally, Mr. Padin suffers from depression and anxiety and is prescribed psychotropic medication to treat those conditions. PSR ¶ 85. After he was molested at 15 years old, he attempted suicide by overdosing. PSR ¶ 87. He first used marijuana when he was 15 years old and used it for the last time one day before arrest for the instant offense. PSR ¶ 89. Additionally, Mr. Padin has suffered an addiction to Percocet that began at age 18 or 19. PSR ¶ 90.

While not employed the last few years, Mr. Padin has spent a majority of his life employed. In fact, since he has been 13 years old, he has been working on and off with his stepfather as a helper, learning the construction field. PSR, 20 97.  Also, from 2014 through 2018 Mr. Padin worked as a free lance production employee for the Department of events in Carlstadt, NJ, and in late 2018, he worded in a steel mill factory. PSR, ¶ 98. Mr. Padin filed income taxes in 2017 and 2018, copies of which were provided to probation. PSR, ¶ 100.

Since day one of his bail supervision, Mr. Padin has been fully compliant with all his supervisory requirements. PSR ¶ 23. For 14 months he has been completely compliant with his home incarceration, and his mental health treatment. *Id*. He checks in weekly *via* web reporting, reports in person as directed, and has exceeded expectations of Pretrial services. *Id*. In fact, Mr. Padin recently discovered the value of counseling—he has been seeing a therapist and a psychiatrist since June 2020 when he was diagnosed with depression and anxiety. PSR ¶ 85. He has also been seeing a behavioral therapy counselor, which will result in a certificate upon completion. Before that, he was attending group therapy as directed by pre-trial services. *Id.* He has been in compliance with his treatment, meets each of his providers once per week, and has been "utilizing 'effective coping skills to manage frustrations with his legal case.'" *Id.*

Not only has Mr. Padin used this time on pretrial release to watch and be with his minor children and get the mental health treatment he needed, but he has also utilized his time in a beneficial way with an eye towards his future. Mr. Padin took an OSHEA course during this time and will receive a certificate on June 16, 2021. PSR, ¶ 92.  This certificate is for general contracting.  Mr. Padin is hopeful that this certificate will help him with his primary goal once he is out of prison, which is to get a job in construction, and support his family, and live a law abiding, productive life from here on out.

Mr. Padin's family have submitted letters for Your Honor's consideration, attached hereto as Exhibit A.  The letters in total show how much family support Mr. Padin has, and how he is a wonderful father to his two children.  Exhibit A. generally. The letters also note that Mr. Padin is the "glue" of his extended family and has had an extremely difficult childhood that he seems to have overcome.  *Id*.  They also show a man who was changing right before his arrest, and who has continued take steps to better himself since his arrest.  *Id*.  Mr. Padin has a very supportive family who will be waiting to help him get back into society and on the right track upon his release from prison.

## APPLICABLE SENTENCING LAW

As Your Honor is well aware, a sentence should (A) reflect the seriousness of the offense, promote respect for the law and provide just punishment for the offense, (B) afford adequate deterrence to criminal conduct; (C) protect the public from further crimes of the defendant; and (D) provide the defendant with needed education or vocational training, [and] medical care. 18 U.S.C. § 3553(a)(2).

In imposing a sentence that is "sufficient, but not greater than necessary to accomplish the sentencing goals set forth in § 3553(a)(2)," a sentencing court should consider: (1) the guideline range; (2) the policy statements of the Sentencing Commission; (3) the nature and circumstances of the offense, and a history of the defendant; (4) any need for sentence to further purposes of deterrence, protective or rehabilitative functions; (5) the kinds of sentences available; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records and conduct; and (7) the need to provide restitution to the victims. 18 U.S.C.§ 3553(a); *see Kimbrough v. United States*, 552 U.S. 85, 110 (2007).

Pursuant to the calculations within the Presentence Report and the plea agreement, Mr. Padin 's USSG advisory base offense level is 30, with an upward adjustment of two levels for possessing a firearm. PSR, ¶ 22. Mr. Padin also had a downward adjustment of three levels for acceptance of responsibility, resulting in a total offense level of 29. PSR ¶ 22. Since he has no criminal history, his advisory sentencing range applicable to the instant offense is 87 to 108 months, with a mandatory minimum term of 60 months' imprisonment. PSR ¶ 22. As detailed in the final PSR, the probation office has recommended the lowest possible sentence, 60 months' imprisonment, due to a variance pursuant to 18 U.S.C. § 3553(a). PSR, p. 29. The probation office has been impressed with Mr. Padin, in that he has "done exceptionally well on pre-trial release." PSR, p. 30. His supervising officer "provided outstanding remarks when [probation] inquired about [his] progress while on bail supervision." *Id.* Mr. Padin has remained responsive and responsible throughout these legal proceedings—he has "abided by all of his pretrial conditions, including home incarceration, and has remained complaint while he attends mental health treatment in the community." *Id.* The probation office has noted that "[i]t appears [Mr. Padin] understands the magnitude of his actions and the consequences he is facing as a result of his involvement in the offense," and that "[b]ased on his pattern of positive actions and activities while in the community, [he] has shown the ability to be a pro-social, productive member of society." *Id.* His mental health treatment provider has reported Mr. Padin has "developed effective coping skills," and he has ceased using drugs and alcohol. *Id.*

Also as set forth above, Mr. Padin has taken active measures to help him once he is out of prison.  He has taken an OSHA course giving him a certificate in construction.  PSR, 92.  He realizes that his experience for 8 years as his stepfather's "helper" in construction, together with this certificate give him an edge in finding a job once he is released from prison and back into society.  Mr. Padin's goal is to work at gainful employment, provide for his two children and wife, and be a law-abiding member of society. This time on pretrial release and the therapy he has undertaken during this time have provided him with tools to use to achieve this goal.  His family and the letters they have written show their unwavering support for Mr. Padin, and ask

4

Your Honor to consider his wonderful qualities, such as being a great father and having endured a horrific childhood. Exhibit A.

A sentence of 60 months, and 4 years of supervised release is sufficient in light of Mr. Padin's professed willingness to rehabilitate, and the actions he has undertaken during this time, as well as the impact that he has had both on Pretrial and Probation.   There is no doubt that the offense with which Mr. Padin has been charged is serious. However, it is also clear that Mr. Padin is remorseful for his past actions and is determined to do better for himself. While on bail for the instant offense, Mr. Padin enrolled in OSHA courses to become certified in the construction industry. PSR ¶ 92. He has also expressed interest in obtaining GED and has started to explore courses to help him do so. *Id.* No greater restriction of his freedom is required to ensure that he continues to fulfill these goals on his rehabilitative path. This is Mr. Padin's only criminal conviction—he "has otherwise largely led a law-abiding life." PSR at p. 29. The probation office was apt to note that "it appears that the greater instant offense involved acts of violence and more culpable co-conspirators," but Mr. Padin's "conduct did not involve violence and he held no leadership role in this offense." PSR at p. 30. It would be no benefit to society or his two young children to take him out of it for longer than 60 months; to the contrary, such a punishment would be "greater than necessary" to accomplish the sentencing goals of punishment, deterrence, incapacitation, and rehabilitation.  See 18 U.S.C. § 3553(a).

## **CONCLUSION**

For all of the foregoing arguments and for other reasons that will be set forth at sentencing, Mr. Padin asks Your Honor to impose a sentence of 60 months with a period of 4 years of supervised release.

Respectfully submitted,<br>
s/<br>
Lorraine Gauli-Rufo<br>
*Attorney for Jacobb Padin*

cc: Andrew Chan, AUSA
    Danielle Sassoon, AUSA